## Slifer's Estate (No. 1).

*Wills—Construction—Income—Survivorship—Gift to class.*

Testator gave his residuary estate to trustees to pay the income therefrom to five nephews and nieces, naming them, "for and during all the terms of their natural lives, and the natural life of the survivors of them," provided that in the event of any or either of the said nieces and nephews dying leaving lawful issue them surviving, then the principal of the said shares was to go to and vest in the child or children of the one or the other of them so dying. He also left in trust the sum of $5,000 to each of the said nephews and nieces who were to receive the income respectively therefrom during their natural lives, and after their decease respectively the principal was to go to their children, or if they should respectively die without children surviving, the principal was to go to and form part of his residuary estate. Testator had nephews and nieces other than, and of a different family, from those named in his will. After his death one of the nieces named in the will died. *Held,* that the income accruing after her death from one-fifth of the residuary estate did not pass under the intestate laws, but was payable to the surviving four nephews and nieces named in the will.

Argued Dec. 5, 1912. Appeal, No. 100, Oct. T., 1912, by Ella C. Booth et al., from decree of O. C. Montgomery Co., Sept. T., 1911, No. 17, dismissing exceptions to adjudication in Estate of Charles C. Slifer, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Exceptions to adjudication. Before SOLLY, P. J.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*Nicholas H. Larzelere,* with him *Charles T. Larzelere,* for appellants, cited: Reck's App., 78 Pa. 432; Woelpper's App., 126 Pa. 562; Board of Mission's App., 91 Pa. 507; Vance's Estate, 209 Pa. 561; Erwin's Est., 5 Montgomery County, 18.

*J. B. Colohan, 3d., John M. Dettra, Montgomery Evans, T. Truxtun Hare, Henry B. Hodge* and *Paul Reilly*, for appellees, cited: Martin's Est., 185 Pa. 51; Edward's Est., 190 Pa. 177; Roney's Est., 227 Pa. 127.

OPINION BY HEAD, J., July 16, 1913:

At the time of the testator's death his next of kin were nephews and nieces of two classes or families. One of these classes were the children and grandchildren of his deceased sister and the other the issue in like degree of a deceased brother. It is conceded on every side that the five persons comprising the first class mentioned were the chief objects of the testator's bounty.

The first twelve items of the lengthy will are devoted to numerous small bequests of varying character. In the five following items, from thirteen to seventeen, inclusive, the testator makes specific bequests to each one of the five favored persons in identical language and under similar conditions. We quote the first of them:

"I give unto my executors the sum of Five Thousand Dollars in trust to invest and keep invested and pay the income derived therefrom when and as received unto my niece, Mary E. Gerhart, for and during the term of her natural life, and after her decease the said principal sum shall go to all the child or children she may leave, and in case the said Mary E. Gerhart shall depart this life without leaving any child or children her surviving, the said sum of Five Thousand Dollars shall go to and form part of my residuary estate."

These provisions, although not directly connected with the question here involved, are of much importance in ascertaining the intent of the testator as we shall presently show.

Mary E. Gerhart, the legatee named, survived the testator but a short time and died unmarried and without issue. The principal sum of the specific legacy to her, therefore, under the express terms of the will, became merged in the residuary fund. We must now look to the

language of the testator disposing of the residuary estate to reach the contention presented by this appeal and discover its solution. Again we quote:

"All the rest and residue of my estate, real, personal and mixed, I give and bequeath unto my executors in trust to divide the same into five equal parts and pay over the interest and income derived therefrom unto my nieces and nephews, Mary E. Gerhart, Charles D. Logan, John W. Logan, Marie Whitfield and Ella Booth, for and during all the terms of their natural lives and the natural lives (life) of the survivor of them; provided, however, &c." No mention is made anywhere in the will of any one of the kindred of the testator belonging to the second class first noted.

This residuary fund was given to the executors under an active trust which was certainly to subsist as long as the beneficiaries named and the survivor of them should live. Such a formal devise of his entire residuary estate to his executors is strong evidence that the testator intended to dispose by will of his entire estate; and this, coupled with the legal presumption against a partial intestacy, seems to us to exclude the conclusion that there was in this case such partial intestacy. It will be observed that the executors are directed to divide the residuary estate "into five equal parts," but this direction apparently was not intended to regulate the income derived from the residuary estate because it is not followed by a gift to any single beneficiary of the income derived from one of such parts or shares. On the contrary, the testator gave the whole of the income derived from all of the shares to the five favored legatees. This, of course, in effect gave to each the one-fifth of the net income. But the income as a whole was to be paid to the legatees named not only "for and during all the terms of their natural lives," but (for and during) "the natural life of the survivor of them."

As we view it, this language fairly imports a disposition by the testator of the income arising from his residuary estate for and during all of the period that would elapse

until the death of the survivor of the five legatees to whom that income was in the first instance jointly given. If an estate or an income were given jointly to A and B during the term of their joint lives and the life of the survivor of them, such survivor would surely take the entire income or estate during the term of his or her life. In no other way that we can discover could adequate effect be given the expression "during the life of the survivor." So in the present case the language of the testator impels us to the conclusion that his intention was to give the whole of the income from his residuary estate to the five favored legatees in equal shares as long as they all should live, and furthermore, that as one by one they should die, the duty of the trustees was still active to pay over the whole of the income to the survivors until the last in turn should die.

The conclusion is strengthened by a consideration of the language of the will immediately following what we have already quoted, to wit:

"Provided, however, that in the event any or either of my said nieces or nephews shall depart this life leaving lawful issue them surviving, then I will and direct that the capital or principal of said share or shares . . . . shall go to and invest in the child or children of the one or the other of them so dying, &c."

Here then we find the reason for the direction to the executors to divide the residuary estate into five parts so that in the event of the death of one favored legatee leaving children, such children should be substituted as to principal and income for the deceased legatee. This construction becomes almost, if not quite, imperative when we give due consideration to the five important items of the will (one of which we have quoted) in each of which a specific legacy of $5,000 is given to one of the favored legatees. Although in each the testator, in terms, contemplated the possibility of the death of the legatee without child or children him or her surviving, he did not predicate thereon a bequest over of the principal

or income of the legacy, to any one or all of the members of the other family. On the contrary the entire legacy, in such event, fell into the residuary estate. For whose benefit, quo ad income at least, if not for that of the survivors of those to whom the income of that estate was given "for and during all the terms of their natural lives and the natural lives of the survivor of them"? We have no knowledge of the extent or value of the residuary estate as it was left at the moment of the testator's death. But it must have been apparent to him that it might become greatly increased by the death of one or more of the favored legatees without children. As to so much of the residuary estate it would be strange if the law were to impute to the testator an intent to do what he steadily declined to do through five carefully drawn paragraphs of his will. We must therefore conclude that the learned court below fell into error in decreeing the income, now for distribution, to the next of kin of the testator, instead of to the four surviving legatees named in the residuary clause of the will.

But it is said the expression "for and during all the terms of their natural lives and the natural life of the survivor of them" is but to indicate the term during which the trust should continue. But it is equally applicable to describe and define what was to be done by the trustees during that period in execution of the trust. The duty to invest the principal and gather the income was continuous. The duty to make distribution was as imperative as the obligation to collect the income, and the distributees of that income were constantly to be found among those jointly named by the testator as the beneficiaries of it who were to continue such beneficial enjoyment not only during the lifetime of all of them but during the lifetime of the survivor.

There can be no presumption favoring the intention of the testator to provide for the accumulation of income in a manner opposed to public policy and the provisions of the statute. Yet, if the will is to be given any other con-

struction than that we have adopted, we must determine that the intention was to provide for such an accumulation or that the effect of the entire will was a partial intestacy. We are not able to take either of these views.

The record now presents no question to warrant us in determining to whom the principal of the residuary estate shall go upon the death of the survivor of the original legatees. The persons who will then participate in the distribution of the principal cannot be ascertained at this time because of the terms of the will itself. We have nothing before us but a distribution of the share of the income that was payable to Mary E. Gerhart until the time of her death. We may add here for the purpose of disposing of the appeal by her executors, argued with the present one, that her interest absolutely ceased with her death, and as the income now for distribution has accrued since that event, her executors were in no way aggrieved by the decree of the court below.

The decree is reversed and the record is remitted to the court below with direction to make distribution in accordance with this opinion. The costs of this appeal to be paid by appellees.